J-S72025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC TODD SNYDER | : | |
| | : | |
| Appellant | : | No. 1205 MDA 2018 |

Appeal from the Judgment of Sentence Entered February 7, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000592-2017

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 16, 2019**

Appellant, Eric Todd Snyder, appeals from the judgment of sentence entered on February 7, 2018, in the Court of Common Pleas of Lebanon County.  We affirm.

The trial court summarized the factual history of this case as follows:

> [Appellant] was charged with various sexual offense[s] involving his granddaughter, [("Victim")].  According to the victim she was able to recall three specific events.  The first incident occurred around the time she was in fourth grade.  The second incident occurred when she was in fifth grade.  The final incident occurred during the summer of 2016.  In addition to the sexual offenses [Appellant] was also charged with destroying evidence on March 2, 2017.
>
> [Appellant's] case went to a jury trial on December 5-6, 2017.  [Victim] was the first witness to take the stand.  She explained that the first time something happened was around the time she was in fourth grade when she was spending a weekend at [Appellant's] home.  [Victim] was sleeping in bed one night when [Appellant] removed her underwear and used his tongue on

her genitals. This contact ended only after she told him to stop. [Appellant] denied ever engaging in oral sex with Victim.

The second time something happened [Victim] believed that she was in fifth grade. She recalled napping in [Appellant's] bed with him and his second wife. [Victim] would have been in the middle of the bed while [Appellant's wife] and the family dog were on one side, and [Appellant] was on the other side of Victim. On this occasion she recalls being awoken because she could feel a hand on her vagina. She further related that this hand was touching in the area of the entrance to the inside of her vagina. [Appellant] testified there would never be a circumstance where the abovementioned parties would have been in bed together taking a nap, and he certainly did not touch [Victim] in the manner described.

The final incident occurred during the summer of 2016. [Victim] was on the second floor of the garage playing pool with [Appellant]. While upstairs he gave her "Strawberry Seagrams" to drink. [Victim] explained that [Appellant] even opened the bottle for her.

Around midnight [Appellant] and [Victim] left the garage and went back into the house for the night. At that point they were in the living room watching a movie. While watching the movie [Appellant] told her to take her pants off because it was so hot outside. Victim said no, but [Appellant] then removed her pants. [Appellant] and [Victim] remained on the couch together watching a movie. While on the sofa [Appellant] began to rub [Victim's] side going lower and lower until his hand was on her vagina. [Victim] described him as "grazing" over top of her underwear with his hand. At first, she thought it was an accident but he kept doing the same thing. In order to stop this behavior, she got up and went to bed. [Appellant] denied that he ever removed [Victim's] pants and did not rub her over her underwear in the area of her vagina. [Appellant] also testified that [Victim] got the alcoholic drink out of the fridge herself and opened the bottle herself. [Appellant] did acknowledge that he allowed [Victim] to consume the alcoholic drink because, "Kids, you know, they want to know what something different is."

[Victim] explained to the jury that in addition to [Appellant] sexually abusing her over the course of several years she was also being sexually abused by her other grandfather/adoptive father.

- 2 -

Amidst this very difficult time in the Victim's life she coped by journaling. She kept notebooks at both homes.

At some point after the second incident of abuse by [Appellant], [Appellant's ex-wife] found one of the notebooks. She then spoke to her husband, [Appellant], and [Appellant's] second wife about the contents of the journal. [Appellant's] second wife also found a journal in her home that contained information about sexual abuse. Ultimately all four of them confronted [Victim] about the sexual abuse content contained within the journals. At that time, [Victim] felt overwhelmed and denied that anything happened.

Thereafter, the adults agreed to shred the journals and move forward. However, at some point it was learned that [Appellant] and his wife kept the journal found by [Appellant's] wife. [Appellant] mentioned wanting to keep the journal should allegations like this come up again. He believed the journal was exculpatory.

Ultimately, [Victim] did disclose the abuse. At that point the Pennsylvania State Police began an investigation. During the investigation police became aware of the journals. Trooper Dan Womer applied for a search warrant for [Appellant's] home in order to locate the one remaining journal.

On March 2, 2017, Trooper Womer went to [Appellant's] home to execute the search warrant. At that time Cindy Snyder, [Appellant's] wife, provided a notebook. Trooper Womer believed this was the wrong notebook. However, Ms. Snyder insisted it was the notebook in question. Based on his suspicions Trooper Womer met with the victim and asked her to identify the notebook he was provided. She confirmed his suspicions and explained he had the wrong notebook.

The same day Trooper Womer received a call from William Armolt. He is a long-time friend of [Appellant]. He explained that [Appellant] had contacted him earlier that day and asked to meet up at William Armolt's shop because he had something he needed to make disappear. Armolt then agreed to contact the state police once [Appellant] arrived at his shop. The same day, [Appellant] arrived at Armolt's shop earlier than expected. Once state police arrived it was clear that some items had been placed in the coal

stove and burned. The Pennsylvania State Police collected a cover to a notebook, blank tablet, and burnt paper on scene.

The blank tablet was sent to the Pennsylvania State Police documents section for further testing. Thereafter, Corporal Jennifer Ward Trupp was able to recover some of the writings that would have occurred on the missing pages. [Victim] was able to identify the handwriting as her own. Additionally, she was able to identify that the missing pages were part of the journal in question.

Trial Court Opinion, 8/10/18, at 3-6 (internal citations omitted).

The trial court summarized the procedural history of this case as follows:

The Commonwealth's 3rd Amended Information charged [Appellant] with the following:

Count 1:    Involuntary Deviate Sexual Intercourse with a Child, 18 Pa.C.S. § 3123 §§B (F1);

Count 2:    Aggravated Indecent Assault, 18 Pa.C.S. §3125 §§A7 (F2);

Count 3:    Criminal Attempt/Aggravated Indecent Assault, 18 Pa.C.S. §901 §§A / 18 Pa.C.S. §3125 §§A8 (F2);

Count 4:    Intimidation, Retaliation, or Obstruction in Child Abuse Cases, 18 Pa.C.S. §4958 §§A1 (F2);

Count 5:    Corruption of Minors, 18 Pa.C.S. §6301 §§A1 ii (F3);

Count 6:    Endangering the Welfare of Children, 18 Pa.C.S. §4304 §§A1 (F3);

Count 7:    Indecent Assault, 18 Pa.C.S. §3126 §§A7 (M1);

Count 8:    Indecent Assault, 18 Pa.C.S. §3126 §§A7 (M1);

Count 9:    Indecent Assault, 18 Pa.C.S. §3126 §§A8 (M2);

Count 10:   Tampering with or Fabricating Physical Evidence, 18 Pa.C.S. §4910 §§A1;

- 4 -

Count 11: Obstructing Administration of Law or Other
Governmental Function, 18 Pa.C.S. §5101; and

Count 12: Selling or Furnishing Liquor of Malt or Brewed
Beverages to Minors, 18 Pa.C.S. §6310.1 §§A.

On December 5, 2017, prior to the jury trial being held, the
Court granted [Appellant's] Motion to reduce Count 4 from a
Felony of the second degree to a Misdemeanor of the second
degree. A jury trial was held from December 5, 2017 to
December 6, 2017. The jury found [Appellant] guilty on all twelve
(12) counts.

Trial Court Opinion, 8/10/18, at 6-7.

Appellant was sentenced on February 7, 2018, as follows: at Count 1, a minimum of 10 years and a maximum of 30 years in a State Correctional Facility; at Count 2, a minimum of 2 years and a maximum of 10 years; at Count 3, a minimum of 2 years and maximum of 10; at Count 4, a minimum of 9 months and a maximum of 5 years; at Count 5, a minimum of 9 months and a maximum of 5 years; at Count 6, a minimum of 1 year and a maximum of 7 years; at Count 7, a minimum of 9 months and a maximum of 5 years; at Count 8, a minimum of 9 months and a maximum of 5 years; at Count 9, a minimum of 3 months and a maximum of 2 years; with credit to be given for time served. Sentencing Order, 2/8/18, at 1-4. The sentences imposed on Counts 2, 3, 4, 5, 6, 7 and 8, were to run concurrently with the sentence imposed at Count 1. *Id.* The sentence imposed on Count 9 was to run concurrently with the sentences imposed on Counts 1 through 8. *Id*. Appellant was also sentenced to pay the costs of prosecution and a fine at counts 1 through 12. *Id.*

Appellant filed a post-sentence motion on February 16, 2018, which the trial court denied on June 19, 2018. Appellant filed his notice of appeal on July 17, 2018. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I.     Did the lack of a sufficiently particular timeframe presented at trial by the prosecution in the instant case violate [Appellant's] due process rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution?

II.    During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Appellant] knowingly or intentionally engaged in deviate sexual intercourse with [Victim]?

III.   During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt that [Appellant] knowingly or intentionally digitally penetrated the genitals of [Victim]?

IV.    During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt that [Appellant] knowingly or intentionally attempted to digitally penetrate the genitals of [Victim]?

V.     During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt that [Appellant] knowingly or intentionally obstructed administration of law or other governmental functions?

VI.    During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt that [Appellant] knowingly or intentionally obstructed, impeded, impaired, prevented or interfered with the making of a child abuse report or the conducting of an investigation of suspected child abuse under 23 Pa[.]C.S. Ch. 63 in this case?

VII. During the course of the trial, did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Appellant] knowingly or intentionally had indecent contact with [Victim]?

VIII. During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Appellant] corrupted or tended to corrupt the morals of [Victim]?

IX. Did the trial court judge impose an illegal and/or unreasonable sentence in the above-captioned matter?

Appellant's Brief at 3-4 (renumbered for ease of disposition).

In his first issue, Appellant argues that the Commonwealth failed to identify a sufficiently particular timeframe during which the crimes were alleged to have occurred. Appellant's Brief at 11. Appellant maintains that the fact that the Information alleged that Appellant committed the "crimes on or about September 2011 through September 2016," a span of five years, was insufficiently specific and therefore violated his due process rights. *Id.* at 11-12. Specifically Appellant argues that the Commonwealth failed to prove the date of the crime with sufficient particularity to uphold the involuntary deviate sexual intercourse ("IDSI"), indecent assault, and corruption of minors convictions. *Id.* at 11-12, 21-22, and 22-23. Appellant cites *Commonwealth v. Devlin*, 333 A.2d 888 (Pa. 1975), in support of his argument. *Id.* at 12-13.

This Court in *Commonwealth v. Benner*, 147 A.3d 915 (Pa. Super. 2016), succinctly summarized the holding in *Devlin* as follows:

In **Devlin**, our Supreme Court held that due process mandates that the prosecution must fix the date of the commission of the offense with reasonable certainty. **Devlin**, 460 Pa. at 513, 333 A.2d at 890–91. In that case, the prosecution charged the defendant with one count of IDSI for the sexual assault of an intellectually disabled individual that allegedly occurred at some point during a fourteen-month period. The Supreme Court concluded that the defendant's right to due process was violated as the Commonwealth's broad timeframe in which the offense occurred substantially denied the defendant the opportunity to present an alibi defense and to attack the victim's credibility.

Nevertheless, the Supreme Court acknowledged that it was not appropriate to fix a bright line rule but allowed for flexibility in this determination:

> Here, as elsewhere, [t]he pattern of due process is picked out in the facts and circumstances of each case. Due process is not reducible to a mathematical formula. Therefore, we cannot enunciate the exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable. Certainly the Commonwealth need not always prove a single specific date of the crime. Any leeway permissible would vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused.

**Id.** at 515–16, 333 A.2d at 892 (footnote and citations omitted).

**Benner**, 147 A.3d at 920.

Conversely, in **Benner**, the defendant was charged with various sexual offenses that began in July of 2002 and ended in September of 2004. **Benner**, 147 A.3d at 120. This Court found the matter in **Benner** distinguishable from the matter in **Devlin** because **Devlin** involved one single instance of sexual assault, whereas in **Benner**, the defendant was charged with an ongoing pattern of sexual abuse that spanned approximately two years. **Id.** at 920.

Furthermore, this Court pointed out that in **Commonwealth v. G.D.M., Sr.**, 926 A.2d 984, 990 (Pa. Super. 2007), we reaffirmed that "the due process concerns of **Devlin** are satisfied where the victim . . . can at least fix the times when an ongoing course of molestation commenced and when it ceased." **Id.** at 921. Thus, in **Benner**, this Court concluded that the defendant was not deprived due process by the Commonwealth's inability to fix the time of the offenses that occurred in a continuous course of conduct with greater specificity. **Id.**

We find this case to be distinguishable from **Devlin** and similar to **Benner**. In the case *sub judice*, Appellant was charged with a pattern of sexual abuse that spanned several years. Appellant was in a position of trust as related to Victim, and he exploited that relationship and Victim's young age in continuing his course of conduct. Moreover, through her testimony, victim was able to identify the times when the course of molestation commenced and when it ceased. Thus, we conclude that Appellant was not deprived of due process by the Commonwealth's inability to fix the time of the offenses that occurred in a continuous course of conduct with greater specificity. **Benner**, 147 A.3d at 920. Appellant is entitled to no relief on this claim.

Appellant's issues two through eight challenge the sufficiency of the evidence for various convictions.[1] The standard for evaluating sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa. Super. 2011).

---

[1] To the extent that Appellant has also attempted to make claims challenging the weight of the evidence with regard to his issues, Appellant's Brief at 10, 14, 22, and 23, we conclude that those claims are waived for failure to raise them in his Pa.R.A.P. 1925(b) statement. "A challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." ***Commonwealth v. Kinney***, 157 A.3d 968, 971 (Pa. Super. 2017). Claims directed at the credibility of the victim's testimony challenge the weight, not the sufficiency, of the evidence. ***Id.*** at 972. Because Appellant failed to raise challenges to the weight of the evidence in his Pa.R.A.P. 1925(b) statement, any such claims are waived. ***See Commonwealth v. Smith***, 146 A.3d 257, 262 (Pa. Super. 2016) (claims not raised in a defendant's Pa.R.A.P. 1925(b) statement are waived.).

Appellant claims that the Commonwealth did not provide sufficient evidence to convict him of IDSI. Appellant's Brief at 9. Appellant maintains that to establish this conviction, the Commonwealth must prove that the perpetrator engaged in acts of oral or anal intercourse, which involved penetration however slight. *Id.* Despite asserting that the Commonwealth failed to present sufficient evidence to establish this conviction, however, Appellant fails to identify specifically which element has not been proven, and instead attacks the credibility of [Victim's] testimony. *Id.* at 10-11.[2]

The offense of IDSI is defined as follows: "A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3123(b). Section 3101 defines the terms "deviate sexual intercourse" as follows:

> Sexual intercourse per os [oral] or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S. § 3101. "Sexual intercourse" is defined as follows: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." *Id.*

Further, with regard to IDSI, this Court has explained the following:

_____

[2] As noted, such attack on Victim's credibility constitutes a weight of the evidence claim, and such claims are waived.

Therefore, in order to sustain a conviction for involuntary deviate sexual intercourse, the Commonwealth must establish the perpetrator engaged in acts of oral or anal intercourse, which involved penetration however slight. ***Commonwealth v. Poindexter***, 435 Pa.Super. 509, 646 A.2d 1211, 1215 (1994), *appeal denied*, 540 Pa. 580, 655 A.2d 512 (1995). In order to establish penetration, some oral contact is required. ***See Commonwealth v. Trimble***, 419 Pa.Super. 108, 615 A.2d 48 (1992) (finding actual penetration of the vagina is not necessary; some form of oral contact with the genitalia is all that is required). Moreover, a person can penetrate by use of the mouth or the tongue. ***See In the Interest of J.R.***, 436 Pa.Super. 416, 648 A.2d 28 (1994), *appeal denied*, 540 Pa. 584, 655 A.2d 515 (1995) (stating "Deviate sexual intercourse is considered to have occurred if one's mouth or tongue penetrates the vaginal area of another").

***Commonwealth v. L.N.***, 787 A.2d 1064, 1070 (Pa. Super. 2001).

As noted, Appellant has failed to identify or develop an argument regarding which element of the crime had not been established and instead attacks the credibility of Victim's testimony. It is well established that "[a]n argument regarding the credibility of a witness's testimony goes to the weight of the evidence, not the sufficiency of the evidence." ***Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014) (internal citation and quotation marks omitted). Our Supreme Court has emphasized that an "appellant's challenge to the sufficiency of the evidence must fail" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant provides goes to the weight of the evidence. ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999); ***see also Commonwealth v. Gibbs***, 981 A.2d 274, 281-282 (Pa. Super. 2009) (finding that a sufficiency claim raising weight of the evidence arguments would be

dismissed).  Thus, we could find this issue waived due to Appellant's failure to develop an argument regarding the sufficiency of the evidence.

Assuming *arguendo* that the issue had not been waived, we would conclude that the Commonwealth presented evidence sufficient to convict Appellant of this offense.  Victim testified that during the first incident, Appellant used his tongue on her vagina.  N.T., 12/5/17, at 12-13.  She also testified that at the time she was in fourth grade.  ***Id.*** at 12.  Thus, the evidence of record supports a conviction of IDSI.

Appellant next challenges his conviction of aggravated indecent assault.  Appellant's Brief at 14-15.  Appellant contends that there is insufficient evidence to "support the finding that Appellant digitally penetrated Victim's vagina." ***Id.*** at 15.

Aggravated indecent assault is defined as follows:

(a)     **Offenses defined. --** Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

* * *

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S. § 3125(a).  This Court has determined "that the term 'penetration, however slight' is not limited to penetration of the vagina; entrance in the

labia is sufficient." ***Commonwealth v. Hunzer***, 868 A.2d 498, 505-506 (Pa. Super. 2005).

Victim testified that during the second incident, she recalled being awakened because she could feel a hand on her vagina. N.T., 12/5/17, at 15. Victim further explained that Appellant's hand was touching "the outside area of the entrance" to her vagina. *Id.* Victim stated that during the incident, it "[f]irst started happening on top of my clothes and then it was on top of my skin." *Id.* Victim also testified that the incident occurred before she finished fifth grade in June of 2013, making her less than thirteen years of age at the time. *Id.* at 41.

The trial court stated the following in concluding that there was sufficient evidence to convict Appellant of this offense:

> The [c]ourt finds that the Commonwealth presented sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. [Victim's] testimony described [Appellant] touching her genitals, mainly the area of entrance to her vagina, skin-to-skin, with his fingers[,] and that this second incident occurred while Viictim was less than 13 years of age. Finally, the [c]ourt finds that there was no good faith medical, hygienic, or law enforcement procedur[al] purpose for the touching.

Trial Court Opinion, 8/10/18, at 18. The trial court's conclusion is supported by evidence of record. Thus, Appellant's claim is without merit, and he is entitled to no relief on it.

Appellant next claims that there was insufficient evidence to support his conviction for attempted aggravated indecent assault. Appellant's Brief at 15.

Appellant asserts that the Commonwealth failed to present evidence sufficient to prove beyond a reasonable doubt that he "took a substantial step toward knowingly or intentionally penetrating [Victim's] genitals." *Id.* at 16-17.

Appellant was charged with attempt to commit aggravated indecent assault. The offense of "attempt" is defined as follows: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901. As stated previously, aggravated indecent assault is defined as:

> (b) **Offenses defined. --** Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
> * * *
>
> (7) the complainant is less than 13 years of age[.]

18 Pa.C.S. § 3125(a).

As the trial court noted, Count 3 for criminal attempt of aggravated indecent assault was for Appellant's actions as they related to the third incident described by Victim. Trial Court Opinion, 8/10/18, at 19. Further, the trial court provided the following analysis in concluding that there was

sufficient evidence to support the conviction of Appellant for attempted aggravated indecent assault:

> [Victim] testified that after [Appellant] provided her with alcohol[,] they decided to watch a movie. While they were watching a movie [Appellant] told [Victim] that it was hot and suggested she take off her pants. "First I thought that was weird, but I said no I was okay, and then he playfully took off my pants." While the two were laying on the couch watching the movie [Appellant] rubbed [Victim's] side and then he "progressively got lower." "He was rubbing my side, it kept getting lower and lower and lower until it got to my area." "My vagina." "He at first grazed over the top of my clothing and I thought that was an accident and then it happened again. He kept on grazing over it until the point where I noticed what was happening, so I got up and I told him I was going to bed." The [c]ourt finds that the Commonwealth was able to sufficiently establish that [Appellant] took a substantial step to digitally penetrate the genitals of [Victim] when he "grazed" over her vagina multiple times. Further, had the victim not removed herself from the situation this count would not have remained an attempt. As the Commonwealth states, "Based on his previous behaviors against [Victim] as well as his progression of contact that night [Appellant] clearly took a substantial step to commit aggravated indecent assault."

Trial Court Opinion, 8/10/18, at 19-20 (internal citations omitted).

The trial court's determination is supported by evidence of record. Thus, viewing the evidence in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of this crime beyond a reasonable doubt. Accordingly, the trial court did not err in concluding that the Commonwealth presented evidence sufficient to convict Appellant of attempted aggravated indecent assault. Appellant is entitled to no relief on this claim.

Appellant next challenges his conviction for obstructing the administration of law or other government function. Appellant's Brief at 17. Appellant asserts:

Because his actions did not fall within any of the conduct prescribed by [18 Pa.C.S.] §5101, he could not be convicted of obstructing the administration of law in the instant case. Appellant argues that, because he did not use force or violence, physically interfere with or obstruct the execution of the search warrants, breach an official duty, or commit any other unlawful act, his §5101 conviction is unsupported by the evidence, and that his conviction cannot be upheld, as a matter of law.

*Id.* at 18.

The offense of obstruction of justice is defined as follows:

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S. § 5101.

"In evaluating § 5101 convictions, our courts have explained that § 5101 is substantially based upon the Model Penal Code section 242.1." *Commonwealth v. Snyder*, 60 A.3d 165, 175 (Pa. Super. 2013). "As stated in the comment to section 242.1 of the Model Penal Code this provision is designed to cover a broad range of behavior that impedes or defeats the operation of government." *Id.* (internal quotation marks omitted). Further, as our Supreme Court has concluded, there is no authority in this

Commonwealth holding that in order for Section 5101 to apply, "there must be some sort of physical interference with the [government official] as they perform their duties". **Commonwealth v. Scarpone**, 634 A.2d 1109, 1113 (Pa. 1993). Moreover, this Court has held that "section 5101 includes intentional, albeit unsuccessful attempts to influence, obstruct, or delay the administration of law." **Snyder**, 60 A.3d at 177 (quoting **Commonwealth v. Trolene**, 397 A.2d 1200, 1204 (Pa. Super. 1979) (*en banc*)).

Despite Appellant's assertion to the contrary, the evidence of record is more than sufficient to establish that Appellant took intentional actions to obstruct the administration of justice by multiple unlawful actions. The evidence presented at trial established that during the course of the investigation into Victim's allegations, the police became aware of the existence of the journals in which Victim was writing about the sexual abuse. N.T., 12/5/17, at 122. Trooper Womer obtained a search warrant to obtain one of the remaining journals. **Id.** at 122-123. Upon execution of the warrant at Appellant's home, Appellant's wife provided Trooper Womer with a journal. **Id.** at 123-124. Trooper Womer believed this to be the wrong journal. **Id.** at 124. Victim confirmed to Trooper Womer it was not the journal at issue. **Id.** Prior to execution of the warrant, Appellant had been notified of the investigation. **Id.** at 125.

The same day, Trooper Womer received the call from William Armolt ("Armolt"), Appellant's long-time friend. N.T., 12/5/17, at 125. Armolt

advised Trooper Womer that Appellant had contacted Armolt earlier in the day and asked to meet at Armolt's shop because Appellant had something "he needed to make disappear." *Id.* at 107, 126. Later in the day, upon receiving a call from Armolt, officers arrived at Armolt's shop. *Id.* at 127. Trooper Womer took Appellant into custody and asked him where the journal was located. *Id.* Appellant refused to answer. *Id.* Upon searching Armolt's shop, officers found items that had been placed in the coal stove and burned. *Id.* at 130, 135-136. A notebook, blank tablet and burnt paper were recovered from Armolt's shop. *Id.* at 136-142. Through testing, police were able to recover some of the writings that would have been on the missing pages of the notebook. *Id.* at 162-175. Victim identified the writings recovered by the testing as containing her own handwriting, and she confirmed that the missing pages were part of the journal in question. *Id.* at 130.

Thus, viewing the evidence in the light most favorable to the Commonwealth, there is sufficient evidence to enable the fact-finder to find every element of this crime beyond a reasonable doubt. The evidence supports the conclusion that Appellant intentionally obstructed the administration of justice by interfering with the police investigation into Victim's allegations against him by: removing the journal from his residence; having his wife present the officers with a different journal; asking Armolt to use his shop to destroy evidence; and burning pages of the journal in the coal stove. Thus, Appellant is entitled to no relief on this claim.

Appellant next argues that the Commonwealth failed to present evidence sufficient to prove beyond a reasonable doubt that Appellant knowingly or intentionally obstructed, impeded, impaired, prevented or interfered with the making a child-abuse report or the conducting of an investigation of suspected child abuse. Appellant's Brief at 20-21. Appellant further argues that there was no evidence that he "intimidated or attempted to intimidate any reporter, victim or witness." *Id.* at 21.

Appellant was charged with intimidation, retaliation, or obstruction in child abuse cases pursuant to 18 Pa.C.S. § 4958(a)(1), as related to his attempts to destroy or hide evidence. Third Amended Information, 12/5/17, at 1. The offense of intimidation, retaliation, or obstruction in child abuse cases is defined as follows:

> (a) **Intimidation.--** A person commits an offense if:
>
> (1) The person has knowledge or intends that the person's conduct under paragraph (2) will obstruct, impede, impair, prevent or interfere with the making of a child abuse report or the conducting of an investigation into suspected child abuse under 23 Pa.C.S. Ch. 63 (relating to child protective services) or prosecuting a child abuse case.
>
> (2) The person intimidates or attempts to intimidate any reporter, victim or witness to engage in any of the following actions:
>
>> (i) Refrain from making a report of suspected child abuse or not cause a report of suspected child abuse to be made.
>>
>> (ii) Refrain from providing or withholding information, documentation, testimony or

> evidence to any person regarding a child abuse investigation or proceeding.
>
> (iii) Give false or misleading information, documentation, testimony or evidence to any person regarding a child abuse investigation or proceeding.
>
> (iv) Elude, evade or ignore any request or legal process summoning the reporter, victim or witness to appear to testify or supply evidence regarding a child abuse investigation or proceeding.
>
> (v) Fail to appear at or participate in a child abuse proceeding or meeting involving a child abuse investigation to which the reporter, victim or witness has been legally summoned.

18 Pa.C.S. § 4958(a).

The trial court addressed this issue as follows:

> The parties entered into a stipulation agreeing that [Appellant] called his longtime friend [Armolt] informing him that the Pennsylvania State Police ("PSP") had just been to [Appellant's] home with a search warrant to obtain a journal. [Appellant] then stated that he needed to meet with [Armolt] because he had something he had to make disappear. [Armolt] alerted [PSP] that [Appellant] was planning to come to his shop, and he later notified PSP when [Appellant] was at the shop.
>
> The [c]ourt finds that the Commonwealth provided sufficient evidence to enable the jury to find that [Appellant] had the knowledge or intention to obstruct, imped[e], impair, prevent, or interfere with the making of a child abuse report and while conducting an investigation into suspected child abuse. [Appellant] attempted to make the notebook/journal described by [Victim] as the one she chronicled her sexual abuse at the hands of [Appellant] "disappear." Despite the admission that some evidence was destroyed, [Victim] was able to identify the blue notebook/journal found in the coal stove of [Armolt's] shop as the same journal she chronicled her sexual abuse at the hands of [Appellant]. Secondly, [Appellant] attempted to convince a

- 21 -

witness to refrain from providing or withholding information, documentation, testimony, or evidence to any person regarding a child abuse investigation or proceeding. Finally, after arriving at [Armolt's] shop and placing [Appellant] under arrest Trooper Womer asked [Appellant] where the journal was to which [Appellant] responded that they had already handed over a journal. Accordingly, [] the Commonwealth did present sufficient evidence to sustain a conviction for the Intimidation, Retaliation, or Obstruction in Child Abuse Cases.

Trial Court Opinion, 8/10/18, at 24-25 (internal citations omitted).

The trial court's determination is supported by evidence of record. The evidence was sufficient to establish the elements of this offense. Appellant is entitled to no relief on this claim.

Appellant next challenges his three convictions for indecent assault. Appellant's Brief at 21. Appellant argues that the evidence presented at trial was insufficient to establish the indecent-assault charges because the Commonwealth did not establish that he had indecent contact with Victim. *Id.* at 21-22.[3]

Counts 7 and 8 of the third amended criminal information charged Appellant with Indecent Assault under 18 Pa.C.S. § 3126(a)(7). Third Amended Criminal Information, 12/5/17, at 1-2. Count 9 charged Appellant with indecent assault pursuant to 18 Pa.C.S. § 3126(a)(8). *Id.* at 2. The statute defining indecent assault, in pertinent part, states the following:

**(a)  Offense defined.--** A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or

_____

[3] Appellant also makes an argument regarding the weight of the evidence, which for reasons previously discussed, we find waived.

intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

* * *

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126(a)(7) and (8). "Indecent contact" is defined as: "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

As outlined, there is sufficient evidence of record to establish that on three separate occasions, Appellant touched Victim's genitals. Moreover, viewing the evidence in the light most favorable to the Commonwealth, the evidence supports the conclusion that Appellant did so for the purpose of arousing or gratifying sexual desire. Furthermore, Victim was less than thirteen years of age at the time of the first two incidents, and at the time of the third incident, she was less than sixteen years old, Appellant was four years older than her, and the two were not married. Thus, the Commonwealth has presented evidence sufficient to sustain the three convictions of indecent assault.

Appellant also challenges the corruption of minors conviction. Appellant's Brief at 22. Appellant argues that the "sufficiency of the evidence

presented at trial does not support a conviction for the sexual offenses

involving [Victim] as charged." *Id.* at 23.

An offense of corruption of minors is defined, in relevant part, as follows:

> Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

Our Supreme Court has explained:

> The Commonwealth need not prove that the minor's morals were actually corrupted. Rather, a conviction for corrupting morals will be upheld where the conduct of the defendant tends to corrupt the minor's morals. The statute speaks to conduct toward a child **in an unlimited variety of ways** which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct.

*Commonwealth v. Slocum*, 86 A.3d 272, 277 (Pa. Super. 2014) (quoting

*Commonwealth v. Mumma*, 414 A.2d 1026, 1030 (Pa. 1980)) (emphasis

included).

"The statute requires that the knowing, intentional acts of the

perpetrator **tend** to have the effect of corrupting the morals of a minor."

*Commonwealth v. DeWalt*, 752 A.2d 915, 918 (Pa. Super. 2000) (emphasis

included). Any actions that tended to corrupt the morals of minors are those

that "would offend the common sense of the community and the sense of

decency, propriety, and morality which most people entertain." *Id.*

Furthermore, this Court has explained the following with regard to the offense of corruption of minors:

> Corruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need to be protected.

*Slocum*, 86 A.3d at 278-279 (internal citation omitted).

The evidence of record establishes a course of conduct of sexual abuse by Appellant, an adult over the age of eighteen, toward Victim, who during the relevant period of time was under eighteen years of age. Illicit sexual contact between a defendant and a minor is sufficient to prove corruption of minors. *See Commonwealth v. Castelhun*, 889 A.2d 1228, 1234 (Pa. Super. 2005) (holding defendant's repeated sexual assaults on minor child satisfied the elements of corruption of minors). Furthermore, during the course of the third incident, Appellant provided Victim with alcohol. N.T., 12/5/17, at 16-17. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that these actions can be viewed as tending to corrupt the morals of a minor as they "would offend the common sense of the community and the sense of decency, propriety, and morality which most people entertain." *DeWalt*, 752 A.2d at 918. Accordingly, we agree with the trial court that there was sufficient evidence to establish the conviction of corruption of minors, and Appellant is entitled to no relief on this claim.

In his final issue, Appellant argues that the trial court imposed an illegal and/or unreasonable sentence. Appellant's Brief at 23. Although in framing his issue Appellant asserts that his sentence was illegal, review of his claim reveals that he is in fact challenging the discretionary aspects of his sentence. *Id.* at 23-27. Specifically, Appellant contends that this sentence imposed "was unduly harsh given his relatively minor prior record, his conduct while out on bail, the determination the [sic] by the [Sexual Offenders Assessment Board] that he was not a sexually violent predator, and the timeframe of the alleged offenses." *Id.* at 27.

We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [708]; (3) whether appellant's brief has

a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. ***Commonwealth v. Sierra***, 752 A.2d 910, 912–913 (Pa. Super. 2000).

Herein, Appellant brought a timely appeal and raised the challenges in a post-sentence motion. He failed, however, to include in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). The Commonwealth failed to object to this omission. As this Court has explained, an appellate court may overlook an appellant's failure to comply with Rule 2119(f) where the appellee fails to object to the omission and a substantial question is evident from the appellant's brief. ***Commonwealth v. Kneller***, 999 A.2d 608, 614 (Pa. Super. 2010).

Therefore, we determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court. As noted, Appellant asserts that the sentence imposed was

- 27 -

excessive in light of his prior criminal history, his conduct while on bail, the determination that he was not a sexually violent predator, and the timeframe of the alleged offenses. Appellant's Brief at 27. This is essentially a claim that the trial court failed to properly consider mitigating factors when fashioning Appellant's sentence. "This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Matroni*, 923 A.2d 444, 455 (Pa. Super. 2007); *see also Commonwealth v. Corley*, 31 A.3d 293, 297 (Pa. Super. 2011) (citation omitted) (holding that "a claim that the court failed to consider certain mitigating factors does not present a substantial question" for our review); *Commonwealth v. Downing*, 990 A.2d 788, 794 (holding the appellant did not raise a substantial question where he alleged the trial court failed to consider the mitigating factors of his employment history, education, background, and his struggles with family). Thus, Appellant has failed to raise a substantial question for our review.

Furthermore, even if Appellant had raised a substantial question for our review, his claim is without merit. The trial court properly considered the presentence investigation report ("PSI")[4] and sentencing guidelines, and discussed its reasons for its sentence on the record. N.T., 2/7/18, at 11-22.

---

[4] Where the sentencing court had the benefit of a PSI, we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Moury*, 992 A.2d at 171.

- 28 -

Accordingly, the trial court did not abuse its discretion in sentencing Appellant. Appellant's assertion that the sentence was unduly harsh and excessive is without merit.

Finally, although not raised by Appellant, our review of this matter reflects an error in Appellant's sentencing. Specifically, Appellant's conviction of indecent assault at count 7 merges with IDSI at Count 1. "Whether Appellant's convictions merge for sentencing is a question implicating the legality of Appellant's sentence." *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009). Issues related to legality of sentence may be raised *sua sponte*. *Commonwealth v. Tighe*, 184 A.3d 560, 584 (Pa. Super. 2018), *appeal granted on different grounds*, 195 A.3d 850 (Pa. October 15, 2018).

The statute governing the merger of sentences provides:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. The statute "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Baldwin*, 985 A.2d at 833.

In this case, count 1 for IDSI with a child and count 7 for indecent assault with a child arise from the first incident of abuse. Third Amended Criminal Information, 12/5/17, at 1-2; Verdict Slip, 12/6/17, at 1-3. Thus,

they arise from a single criminal act. We next consider whether all of the statutory elements of one of the offenses are included in the statutory elements of the other. **Baldwin**, 985 A.2d at 833.

As noted previously, the offense of IDSI with a child is defined as follows: "A person commits [IDSI] with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3123(b). Section 3101 defines the terms "deviate sexual intercourse" as follows:

> Sexual intercourse per os [oral] or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S. § 3101. "Sexual intercourse" is defined as follows: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." **Id.**

The statute defining indecent assault, in pertinent part, states the following:

> (a) Offense defined.-- A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> * * *
>
> (7) the complainant is less than 13 years of age;

18 Pa.C.S. § 3126(a)(7).

- 30 -

In **Tighe**, 184 A.3d 560, this Court concluded that defendant's conviction for indecent assault merged for sentencing purposes with his conviction for IDSI. The **Tighe** Court explained that proof of the "deviate sexual intercourse" requirement of Section 3123 satisfies the "indecent contact" element of Section 3126. **Tighe**, 184 A.3d at 585. "Thus, proof of involuntary deviate sexual intercourse with a person under sixteen necessarily proved indecent assault of a person under sixteen.[5] Accordingly, the convictions merge for sentencing purposes." **Id.**

Herein, the criminal act underlying the convictions for the two offenses is the same and proof of IDSI with a child proved indecent assault with a person under thirteen years of age. Therefore, the trial court erred when it imposed separate sentences for the IDSI and indecent assault convictions at counts 1 and 7.

Accordingly, we vacate the judgment of sentence for indecent assault at count seven, as it merges with IDSI at count one.[6] We need not remand for re-sentencing, however, as we have not upset the sentencing scheme. The sentence for indecent assault at count 7 consisted of a sentence to be served concurrently to counts 1 through 9, and the aggregate sentence is not

---

[5] The relevant statutory provisions in **Tighe** related to a sixteen year old complainant.

[6] "Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S. § 9765.

changed by merging the sentences. ***Commonwealth v. Klein***, 795 A.2d 424, 430 (Pa. Super. 2002).

> Where a case requires a correction of sentence, this Court has the option of either remanding for resentencing or amending the sentence directly. [Because the sentences for the two convictions] run concurrently. . . . the aggregate sentence is not changed by merging the sentences. As such, a remand is not necessary. Instead we will vacate the concurrent sentence for [one of the convictions].

***Id.***; ***see also Commonwealth v. Thur***, 906 A.2d 552, 569-570 (Pa. Super. 2006) (holding if appellate court can vacate illegal sentence without upsetting the trial court's overall sentencing scheme, it need not remand for resentencing). The judgment of sentence as corrected in this opinion is affirmed in all other respects.

Convictions affirmed. Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/16/2019